Herbert Shainberg and Mariette Shainberg et al. [1] v. Commissioner. Shainberg v. Commissioner
Docket Nos. 26838, 26839, 26840, 26841, 26842, 26843, 26844, 26845.
United States Tax Court
1953 Tax Ct. Memo LEXIS 352; 12 T.C.M. (CCH) 201; T.C.M. (RIA) 53068; February 27, 1953
*352 Prior to August 1, 1941, petitioners Sam Shainberg, Nathan Shainberg, Herbert Shainberg, and Ben Goldstein were equal partners in the business of Shainberg Dry Goods Company of Memphis, Tennessee. On August 1, 1941, each of the partners conveyed to two trustees, who were in no way related to the settlors, a part of their partnership interests in the business, in trust, for their children. The trusts were irrevocable. After such transfers a written partnership agreement was entered into by the four partners, who prior thereto had been the sole partners, and the two trustees, acting for and on behalf of the trusts, providing that the business of Sam Shainberg Dry Goods Company should thereafter be conducted as a partnership by the four original partners and the ten irrevocable trusts which had been created by the trust indentures of August 1, 1941. Held, the partnership agreement was entered into by the parties with a bona fide intent in good faith and acting with a business purpose to join together in conducting as a general partnership the Shainberg Dry Goods Company, and the respective partners should be taxed with their share of partnership profits as fixed in the partnership agreement. *353 E. Chas. Eichenbaum, Esq., Boyle Building, Little Rock, Ark., Leonard L. Scott, Esq., and W. S. Miller, Jr., Esq., for the petitioners. S. Earl Heilman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings involve deficiencies in income tax, as follows: Docket
No.
Petitioner
Year
Deficiency
26838
Herbert Shainberg and
Mariette Shainberg
1944
$84,069.26
26839
Ben Goldstein
1943
97,414.62
1945
93,698.20
1946
30,521.09
26840
Nathan Shainberg and
Dorothy Shainberg
1944
84,048.31
26841
Ben Goldstein and Min-
nie Goldstein
1944
84,159.07
26842
Nathan Shainberg
1943
97,787.33
1945
93,853.37
1946
30,566.64
26843
Sam Shainberg
1943
87,083.30
1945
89,626.81
1946
44,846.98
26844
Herbert Shainberg
1943
97,780.93
1945
93,563.89
1946
30,545.90
26845
Estate of Elizabeth
Shainberg, Deceased,
Sam Shainberg, Ad-
ministrator; and Sam
Shainberg
1944
77,079.40
In Sam Shainberg, Docket No. 26843, in determining a deficiency in the income tax of petitioner for the year 1943, the Commissioner did so by adding to the *354 net income as disclosed by petitioner's return "(a) Partnershipincome $59,071.74." This adjustment was explained in the deficiency notice as follows: "(a) In your return you reported distributable income from the partnership, Sam Shainberg Dry Goods Company, for its taxable year August 1, 1941 to January 31, 1942 in the amount of $30,692.63. It is held that the trusts created by you, namely: Beatrice Shainberg Leach Trust, Herbert Shainberg Trust, Minnie Shainberg Goldstein Trust and Nathan Shainberg Trust, were not members of the partnership organized on August 1, 1941, within the meaning of the Internal Revenue Code; that since the recognized partners of a predecessor partnership and the recognized partners of the partnership organized on August 1, 1941, were the same individuals (Sam Shainberg, Nathan Shainberg, Ben Goldstein and Herbert Shainberg) and since the predecessor partnership was not granted permission to change its taxable year, the income of the partnership has been determined in the total amount of $374,057.49 on the basis of a taxable year beginning on August 1, 1941 and ending on July 31, 1942; and that your correct distributable income therefrom amounted to $89,764.37. *355 Accordingly, your income has been increased in the amount of $59,071.74." Similar adjustments were made to Sam Shainberg's income for the years 1945 and 1946 in the same Docket No. 26843, resulting in the deficiencies determined for those years and were explained in the deficiency notice in the same manner as above noted. Petitioner Sam Shainberg assigned error as to the foregoing adjustments stating, among other things, as follows: "(h) The Commissioner of Internal Revenue erred in computing the amount of partnership income attributable to the petitioner for the periods hereinabove indicated." The deficiencies against the other petitioners in the other docket numbers were determined in the same manner as in Sam Shainberg, Docket No. 26843, and the explanation was the same as noted above and the assignments of error were the same except as to amounts. It is not deemed necessary to set out these details here. The main issue raised in each docket number is the partnership issue. The proceedings have been consolidated. Findings of Fact Some of the facts were stipulated and as stipulated are adopted as a part of these Findings of Fact and are incorporated herein by reference. *356 Petitioners Herbert Shainberg and Mariette Shainberg are husband and wife. Petitioners Ben Goldstein and Minnie Goldstein are husband and wife. Petitioners Nathan Shainberg and Dorothy Shainberg are husband and wife. Petitioner Sam Shainberg was the husband of Elizabeth Shainberg, now deceased, whose estate is also a petitioner in this action. Nathan Shainberg, Herbert Shainberg, Minnie Goldstein and Beatrice Leach are children of Sam Shainberg. Nathan Shainberg, Herbert Shainberg and Ben Goldstein each have two children. All the parties reside in Memphis, Tennessee. The income tax returns were filed with the Collector for the District of Tennessee. Nathan Shainberg was 34 years of age in 1941. Ben Goldstein was 40 years of age in 1941. The business involved in this proceeding, Sam Shainberg Dry Goods Company, was founded by Sam Shainberg in 1902 or 1904, originally consisting of one retail store in Memphis, and a wholesale business operated from an annex in the back of that store. Nathan Shainberg, Herbert Shainberg, and Ben Goldstein have each worked in the business since their high school days, each having more than 20 years experience in the business. In 1925, the wholesale *357 part of the business was moved from where it was then situated, and expanded. In 1928, Sam Shainberg Dry Goods Company, sometimes hereafter referred to as The Dry Goods Company, began to open additional retail stores and gradually terminated the wholesale business, becoming a chain of retail department stores prior to the years involved in this proceeding. In 1936, The Dry Goods Company became a partnership with Sam Shainberg, Nathan Shainberg, Herbert Shainberg, and Ben Goldstein each owning a one-fourth interest in the business. This partnership is the immediate predecessor of the partnership organized August 1, 1941, with the above four original partners and the trusts hereinafter described as participating members. In July 1940, Sam Shainberg suffered a severe heart attack and was rendered totally and permanently disabled. Since that date he has been completely inactive, his connection with the business being limited to occasional social visits. In the early part of 1941, the then partners in The Dry Goods Company became concerned about the status of their business due to the threatening international situation. Sam Shainberg was no longer active and Nathan Shainberg and Herbert *358 Shainberg had registered for the draft on October 16, 1940. Ben Goldstein, 39 years of age at the time, was not at the moment in prospect of being drafted but he had no experience with the financial and management phases of the business, having spent most of his time supervising individual stores. With the draft regulations changing frequently, the partners were worried about the fate of their partnership business if the two Shainberg brothers were called into military service. The partners discussed this problem frequently seeking a solution which would insure the continuance of the business in the event the managing partners were drafted. This emergency situation had much to do with the creation, in 1941, of trusts by each of the then partners whereby these trusts acting through the contrustees, Eugene Sebulsky and Auvergne Williams, became active participating partners in The Dry Goods Company. Nathan Shainberg, Herbert Shainberg, and Ben Goldstein had two primary purposes in mind for the establishment of the trusts: (1) insurance of the continuance of the management of the business in competent hands in the event any or all of the then active partners were forced to leave the *359 business, and (2) the setting up of a separate fund or estate for the benefit of their minor children. Sam Shainberg's purpose in creating the trusts was to set aside separate interests for each of his children, who were all adults and married. He had had this plan in mind for a long time prior to the situation which motivated the other partners. On August 1, 1941, the following instruments were executed: (1) Nathan Shainberg transferred to Eugene Sebulsky and Auvergne Williams, as trustees, a 1/12 interest in the partnership theretofore composed of Sam Shainberg, Herbert Shainberg, Ben Goldstein, and Nathan Shainberg for the benefit of his son David Shainberg born April 16, 1932. (2) Nathan Shainberg transferred to the same trustees a 1/12 interest in the business for the benefit of his son Lawrence Shainberg born June 5, 1936. (3) Herbert Shainberg transferred to the same trustees a 1/12 interest in the business for the benefit of his son Terry Shainberg born March 5, 1936. (4) Herbert Shainberg transferred to the same trustees a 1/12 interest in the business for the benefit of his daughter Suzanne Shainberg born June 14, 1939. (5) Ben Goldstein transferred to the same *360 trustees a 1/12 interest in the business for the benefit of his son Jerome J. Goldstein born March 15, 1927. (6) Ben Goldstein transferred to the same trustees a 1/12 interest in the business for the benefit of his daughter Donna Goldstein born December 20, 1931. (7) Sam Shainberg transferred to the same trustees a 1/40 interest in the business for the benefit of his son Nathan Shainberg. (8) Sam Shainberg transferred to the same trustees a 1/40 interest in the business for the benefit of Herbert Shainberg. (9) Sam Shainberg transferred to the same trustees a 1/40 interest in the business for the benefit of Minnie Shainberg Goldstein. (10) Sam Shainberg transferred to the same trustees a 3/40 interest in the business for the benefit of Beatrice Shainberg Leach. (11) Sam Shainberg, Nathan Shainberg, Herbert Shainberg, Ben Goldstein, Eugene Sebulsky, and Auvergne Williams (the last two parties acting as trustees under the respective trusts) entered into a partnership agreement for the conduct of a business under the firm name of "Sam Shainberg Dry Goods Company" or "Black and White Stores." Under the terms of the trust instruments executed by Nathan Shainberg, Herbert *361 Shainberg, and Ben Goldstein, which trusts had identical terms with the exception of the donor and beneficiaries, the cotrustees were given unlimited power of control and investment of the trust corpus and income, including the power to enter into partnerships. All income earned by said trust funds was to be held by the trustees and added to the corpus of the trust until the principal beneficiary became of legal age, after which time the trustees had full authority to pay and deliver to the beneficiary all or such part of the income or corpus as the trustees, in their discretion, thought best. In the event of death of the principal beneficiary before distribution of the entire trust fund, provision was made for distribution to the issue of the beneficiary first; or, if no issue, then to the surviving brother or sister of the principal beneficiary; or, if no such brother or sister surviving, to donor's wife or widow; or, if no surviving wife or widow, then to the surviving brothers and sisters of the donor and their issue, then living, per stirpes. The trusts created by Sam Shainberg all provided for the same general powers of the cotrustees as provided in the trusts created by the *362 other partners, and provided for the accumulation of income in the fund until the death of Sam Shainberg. After his death, and during the life of the beneficiary, the cotrustees had full authority to pay and deliver to the beneficiary all or any part of the trust corpus or income in the sole discretion of said trustees. Any undistributed part of the trust fund remaining after the death of the principal beneficiary was to be distributed to his issue, share and share alike, per stirpes, providing such issue lived to the age of 21 years. In case no survivor of the above class existed, the balance of the trust fund would go to the other children of Sam Shainberg and their issue, then living, per stirpes. Each trust instrument provided that the original cotrustees would serve without compensation. The articles of partnership executed August 1, 1941, provided that all partnership profits and losses were to be shared by the partners in the same ratio as the partnership capital, which capital was stated as follows: Name of Partner
Capital Owned
Nathan Shainberg, 1/12, or
$ 33,333.34
Eugene Sebulsky and Auvergne Williams, trustees for David Shainberg,
1/12, or
33,333.33
Eugene Sebulsky and Auvergne Williams, trustees for Lawrence Shain-
berg, 1/12, or
33,333.33
Herbert Shainberg, 1/12, or
33,333.34
Eugene Sebulsky and Auvergne Williams, trustees for Terry Shainberg,
1/12, or
33,333.33
Eugene Sebulsky and Auvergne Williams, trustees for Suzanne Shainberg,
1/12, or
33,333.33
Ben Goldstein, 1/12, or
33,333.34
Eugene Sebulsky and Auvergne Williams, trustees for Jerome J. Gold-
stein, 1/12, or
33,333.33
Eugene Sebulsky and Auvergne Williams, trustees for Donna Goldstein,
1/12, or
33,333.33
Sam Shainberg, 4/40, or
40,000.00
Eugene Sebulsky and Auvergne Williams, trustees for Nathan Shainberg,
1/40, or
$ 10,000.00
Eugene Sebulsky and Auvergne Williams, trustees for Herbert Shainberg,
1/40, or
10,000.00
Eugene Sebulsky and Auvergne Williams, trustees for Minnie S. Gold-
stein, 1/40, or
10,000.00
Eugene Sebulsky and Auvergne Williams, trustees for Beatrice S. Leach,
3/40, or
30,000.00
Total
$400,000.00
*363 The partnership agreement provided that the active partners would receive reasonable salaries to be agreed upon by all of the partners, to be treated as an item of expense as if paid to an employee of the partnership. The partnership agreement provided for no definite term. Salaries were paid to the active partners in the following amounts for the periods stated: For the six months ended January 31,
1942, partners' salaries $24,000
For the fiscal year ended January 31,
1943: Ben Goldstein
$10,000
Nathan Shainberg
10,000
Herbert Shainberg
10,000
For the fiscal year ended January 31,
1944: Ben Goldstein
10,000
Nathan Shainberg
10,000
Herbert Shainberg
10,000
For the fiscal year ended January 31,
1945: Ben Goldstein
10,000
Nathan Shainberg
10,000
Herbert Shainberg
10,000
For the fiscal year ended January 31,
1946: Ben Goldstein
15,000
Nathan Shainberg
15,000
Herbert Shainberg
15,000 The trustee partners received no compensation for their services. Auvergne Williams, one of the contrustees in each of the trusts involved, was born in 1898 and practiced law from 1911 until 1949, when he retired from the active practice of law. He practiced *364 law in MemphisTennessee, from about 1912 until his retirement, his clientele being largely with wholesale and retail merchants in the area. Williams first met Sam Shainberg when he operated the small retail store at 687 South Orleans Street, and represented Shainberg and his family as counsel from that time until his retirement from the active practice of law. Williams has had extensive experience as trustee for various trusts, both in the mercantile and agricultural fields. One such trust involves a corpus worth approximately one million dollars. Williams has had considerable experience in the real estate field, being president of a building and loan association, and owning certain valuable real estate in the city of Memphis, both as trustee and individually. Williams prepared the trust instruments involved in this proceeding. All of the parties involved were furnished with executed copies of the agreements at the time they were executed. About the middle of July 1941, Nathan Shainberg came to the law office of Williams, telling him that Nathan Shainberg, Herbert Shainberg, Sam Shainberg, and Ben Goldstein wished to create trusts in which the trust funds would be an interest in *365 the Sam Shainberg Dry Goods Company, and asked Williams if he would be willing to serve, along with Eugene Sebulsky, as cotrustee of the trusts and as a member of the new partnership. Williams stated that he would accept the trust. A short time after that the four donors came to the office of Williams and authorized him to prepare trust instruments, giving him the deatailed information required. The papers, including the partnership agreements, were prepared and were executed on August 1, 1941, by the four original partners and the two trustees. Beginning August 1, 1941, Williams, in his capacity as trustee, acted as a bona fide partner for the new partnership, participating in the management and control of the business as a partner. He attended numberous partnership meetings and visited the place of business at least once a week. When matters of policy came up, he felt free to and did discuss his views. He impressed upon the other partners that he did not favor increasing the partnership debt ratio to total capital, and that policy was accepted. Williams, acting as trustee partner, participated in all discussions involving overall partnership policy. It was upon his recommendation, *366 and largely through his efforts, that the partnership was able to buy a location for a retail store at Main and Gayeso Streets in Memphis, giving the partnership a retail store with frontage of 122 feet, approximately in the shopping center of the city. Later Williams recommended the forming of a corporation to hold the real estate interests of the partnership, and this action was taken. He kept up with the current operations and financial condition of the partnership. The trustees kept the trust funds separate so that it could be determined exactly what was in the trust fund at any time. The trusts collectively purchased 40 per cent of the stock in the real estate corporation which was formed to hold real estate formerly owned by the partnership. The partners had disagreements and Williams exercised his own opinion, free from the influence of the other partners. At one time, Williams found that the partnership had made charitable contributions and charged a pro rata part to the various trusts. He wrote a letter directing that this action be reversed in so far as the trustee partners were concerned and directing that the funds be restored. His directions were carried out. Williams *367 visited at retail outlets of the partnership on many occasions, including the out-of-town stores, but did not attempt to actively direct this part of the partnership activity. Prior to August 1, 1941, Williams was counsel for Sam Shainberg Dry Goods Company. Prior to that time he never went to the place of business, the then partners coming to his office when they wanted to discuss legal matters with him, not more than once a month. He never attended any business meetings of the partnership until he became a trustee partner, after that he attended many meetings of the partners. On February 1, 1946, Sam Shainberg Dry Goods Company was incorporated, with separate corporations being organized for the separate retail stores. All of the partnership assets were not conveyed to the new corporations, and the partnership formed August 1, 1941, still exists, its assets consisting primarily of investment securities. At no time has any part of the trust fund been returned to the donors, or used in any manner under their control, or used to benefit the donors, directly or indirectly, the trustees acting independently in accordance with the trust instruments in the use and control of the trust *368 funds. Williams served as trustee without compensation out of his long friendship for the Shainberg family. He is still trustee of the trusts involved in this proceeding. The business operated by the partnership involved in this proceeding is the type in which capital is a vital income-producing factor. The amount of capital employed in the partnership in 1941 was a reasonable amount in order to accomplish the volume of sales made. When the new partnership was formed on August 1, 1941, notice of the addition of the trustee partners was given to the bank with which the partnership had its account, the First National Bank of Memphis, Tennessee. Not only was the bank given notice, but it was furnished a copy of the partnership agreement and a copy of one of the trust agreements. Notice of the change in the partnership was also given to Dun & Bradstrect, together with a copy of the partnership agreement and a copy of one of the trusts. The articles of partnership executed August 1, 1941, were amended February 1, 1944. The purpose of this amendment was to increase the stated capital of the partnership to $900,000, with the respective partnership interests declared as follows: Amount
Percentage
of Capital
of Capital
Name of Partner
Owned
Owned
Sam Shainberg
$ 67,500.00
7 1/2
Ben Goldstein
67,500.00
7 1/2
Nathan Shainberg
67,500.00
7 1/2
Herbert Shainberg
67,500.00
7 1/2
Eugene Sebulsky and
Auvergne Williams, as
trustees for each of the
following parties: David Shainberg
75,000.00
8 1/3
Lawrence Shainberg
75,000.00
8 1/3
Terry Shainberg
75,000.00
8 1/3
Suzanne Shainberg
75,000.00
8 1/3
Jerome J. Goldstein
75,000.00
8 1/3
Donna Goldstein
75,000.00
8 1/3
Nathan Shainberg
37,500.00
4.16 2/3
Herbert Shainberg
37,500.00
4.16 2/3
Minnie S. Goldstein
37,500.00
4.16 2/3
Beatrice S. Leach
67,500.00
7 1/2
Total
$900,000.00
100
*369 The articles of partnership were further amended on February 1, 1945, changing the stated capital of the partnership to be $1,000,000, owned by the partners as follows: Amount
Percentage
of Capital
of Capital
Name of Partner
Owned
Owned
Sam Shainberg
$ 55,000.00
5 1/2
Ben Goldstein
80,000.00
8
Nathan Shainberg
80,000.00
8
Herbert Shainberg
80,000.00
8
Eugene Sebulsky and
Auvergne Williams, as
trustees for each of
the following parties: David Shainberg
80,000.00
8
Lawrence Shainberg
80,000.00
8
Terry Shainberg
80,000.00
8
Suzanne Shainberg
80,000.00
8
Jerome J. Goldstein
80,000.00
8
Donna Goldstein
80,000.00
8
Nathan Shainberg
50,000.00
5
Herbert Shainberg
50,000.00
5
Minnie S. Goldstein
50,000.00
5
Beatrice S. Leach
75,000.00
7 1/2
Total
$1,000,000.00
100
Gift tax returns were filed by each of the donors evidencing the transfer of the partnership interests to the trustees. When Sam Shainberg created the trusts for his four children, he conveyed a greater interest to the trustees for the benefit of Beatrice Leach because the financial situation of Beatrice and her husband was not as secure as that of *370 his other children. Eugene Sebulsky, one of the cotrustees in each of the trusts involved in this proceeding, was born June 8, 1909. He is a graduate of Vanderbilt University, is a certified public accountant and practiced his profession in Memphis for five years prior to his employment as office manager or comptroller of Sam Shainberg Dry Goods Company in 1939. From the date of his employment to August 1, 1941, Sebulsky was office manager or comptroller, looking after record keeping and other details in the office. He had authority to hire people in his own department only, which department consisted of approximately 10 or 11 employees, but he had nothing to do with employees in other departments. Prior to August 1, 1941, Sebulsky took his orders from Nathan Shainberg and after that date he was recognized by all of the other partners as a trustee partner in the business. He attended the meetings at which general partnership policy was discussed and formulated, which he had not done before. An office manager was hired early in February 1942, to assume the duties as office manager formerly performed by Sebulsky. No comptroller was hired. After August 1, 1941, Sebulsky was put in charge *371 of the personnel policies of the entire chain, instituting policy considerations and adjustments in this regard, and having authority to hire and fire all employees of the company. Sebulsky was given control over the placement of all insurance after he became a trustee partner. Sebulsky also assumed the authority for the selection of local attorneys, auditors, and other professional men whose services were required by the partnership after August 1, 1941. Prior to that time Nathan Shainberg had this authority. Sebulsky, acting as a trustee partner, insisted upon the closing of one of the branch stores operated by the partnership. This insistence was in the face of opposing argument from some of the other partners, but Sebulsky's insistence prevailed and his recommendations were were carried out. In 1945, Sebulsky arranged for a loan of $500,000 in New York City on behalf of the partnership. The members of the Shainberg family had known Sebulsky for more than 20 years prior to the formation of the partnership with him as trustee. When Sebulsky was approached by the existing partners with the request that he act as cotrustee and a member of the partnership in his trustee capacity, he *372 had been examined and rejected by Selective Service for physical reasons. His physical disability was brought about by high blood pressure, which condition he had had for many years prior to the time of his examination. Sebulsky received no compensation for acting as trustee of the various trusts. He agreed to serve partly out of friendship for the family, partly because he considered it a compliment to his ability, and partly because he felt that the acceptance of the greater responsibility would permit him to advance faster in the business, individually. Sebulsky received compensation as an employee of the partnership as follows: Year
Amount
1941
$6,085
1942
6,296
1943
8,147
1944
8,416 Salaries of other employees of the company generally increased 10 per cent or more in the period 1941 through 1942. After 1944, Sebulsky's compensation as an employee remained materially unchanged. On the books of the partnership, separate accounts were kept in the general ledger for each of the trusts created in 1941. For each trust, there was maintained a capital account and a "personal loan" or drawing account. Each year, each trust drawing account was credited with its *373 share of the partnership net earnings and was debited for income taxes paid on the account of such share of net earnings. The drawing account was also debited regularly with withdrawals of cash by the trustees from the partnership. The earnings withdrawn in this manner were deposited to the trust bank account in every case. Sebulsky, as cotrustee, also maintained trust records in which he set out every transaction which transpired with reference to the funds of the trust during the taxable years involved. The cotrustees, Sebulsky and Williams, executed legal instruments and conveyances along with the other partners in the business during the taxable years in controversy. On August 1, 1941, Sam Shainberg, Nathan Shainberg, Herbert Shainberg, Ben Goldstein, and Eugene Sebulsky and Auvergne Williams, cotrustees for each of the ten beneficiaries above named, in good faith and acting with a business purpose intended to join together in the present conduct of the business known as Sam Shainberg Dry Goods Company as a general partnership. Each of the partners remained a partner during the taxable years here involved. Their respective interests in the partnership were shown in our Findings *374 of Fact. The trusts which Nathan Shainberg created by making Eugene Sebulsky and Auvergne Williams cotrustees for his two sons David Shainberg and Lawrence Shainberg; and which Herbert Shainberg created by making the same individuals cotrustees for his son Terry Shainberg and his daughter Suzanne Shainberg; and which Ben Goldstein created by making the same individuals cotrustees for his son Jerome J. Goldstein and his daughter Donna Goldstein; and which Sam Shainberg created by making the same individuals cotrustees for his son Nathan, his son Herbert, his daughter Minnie, and his daughter Beatrice, were all bona fide trusts created for the benefit of the respective beneficiaries. The respective settlors did not have any substantial control over, or interest in, the corpus or income of any trust. The cotrustees, Eugene Sebulsky and Auvergne Williams, as authorized by the trust indentures, contributed capital to the partnership, actively participated in the operation of its business, and rendered vital services to it during each of the taxable years. Opinion BLACK, Judge: The respective parties are agreed that certain more or less minor issues raised by the pleadings are either *375 no longer involved in the case or will be settled by our decision of the partnership issue. Respondent in his brief states the issue to be decided as follows: "Did the petitioners, acting in good faith and with a business purpose, actually intend that the trustees of the ten trusts, created by the several petitioners on August 1, 1941 naming their children as beneficiaries, join together with the petitioners as partners in carrying on business within the meaning of the Internal Revenue Code?" We think this question must be answered in the affirmative and we have so found as an ultimate fact in our Findings of Fact. Much evidence was received at the hearing, both oral and documentary, and we have endeavored to find the facts as disclosed by this evidence. It will be unnecessary to repeat them in this opinion. The Commissioner does not deny that the Sam Shainberg Dry Goods Company was conducted as a partnership during the taxable years but he has recognized only Sam Shainberg, Nathan Shainberg, Herbert Shainberg, and Ben Goldstein, as partners and has determined that each owned a one-fourth interest in the partnership and has determined the deficiencies in accordance with this *376 determination. He has refused to recognize the trusts as partners. Petitioners allege that the partnership was a bona fide legal partnership and was composed of the partners named in our Findings of Fact and with percentage interests named therein. The question of whether a family partnership is real and should be recognized as such depends upon "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both. And their intention in this respect is a question of fact." Commissioner v. Culbertson, 337 U.S. 733. In the Culbertson case the Court also said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing *377 light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" Capital was a material, important, and necessary element for success in the Sam Shainberg Dry Goods Company. Without adequate capital there could have been no profits. The fact that capital contributions were gifts is not controlling, if the gifts were absolute and unconditional as they were here. Commissioner v. Culbertson, supra.The new partners risked their capital gifts and any subsequent additions thereto by becoming partners. Moreover, the petitioners did not benefit from nor retain dominion or control of the new partners' investments or income in the partnership. The original partners and the new partners entered into the partnership agreement with bona fide intent and a business purpose of risking their capital in this partnership. The two trustees, Eugene Sebulsky and Auvergne Williams, after the trusts became partners, took an active part in the business and rendered important and vital services thereto. We hold that the partnership in question was bona fide, valid, and legal. We think that *378 our holding that the partnership here in question was a valid and legal partnership as contended by petitioners under the doctrine laid down by the Supreme Court in the Culbertson case, supra, is in harmony with our decisions in Theodore D. Stern, 15 T.C. 521; Louis R. Eisenmann, 17 T.C. 1426; Edward D. Sultan, 18 T.C. 715; Thomas H. Brodhead, 18 T.C. 726; and Clarence B. Ford, et al., 19 T.C. 200, promulgated November 12, 1952. There can be no question, we think, that the trusts owned the respective interests in the partnership which were conveyed to them and which percentages of ownership have been set out in our Findings of Fact. Being the owner of these partnership interests, we think it is proper that the trusts should be taxed with their percentage interests in the profits and such profits should not be taxed to petitioners as the Commissioner has done. In Thomas H. Brodhead, supra, we said: "The attribution of income from property to the owner of the property was emphasized by the tax committees of the House of Representatives and of the Senate in their consideration of the family partnership provisions that *379 became section 340 of the Revenue Act of 1951. It was the expressed view of the committees that partnership income, where capital is a material income-producing factor, should be taxed to the partners if they were the real owners of their interests regardless of how the interests may have been acquired." * * *
"The family partnership provisions enacted as section 340 of the Revenue Act of 1951 are not retroactive to the years involved in these proceedings. Nevertheless, the basic principle of taxing income from property to the owner of the property was the law in the earlier years as fully as it is today. A proper appraisal of the evidence is convincing that the trusts in these proceedings were the owners of the property held by them. * * *" Petitioners urge that the undisputed facts in this case merit the same finding. We think they do. While each of these family partnership cases must largely depend upon its own facts, we think the case of Louis R. Eisenmann, supra, is particularly appropriate to cite in the instant proceeding. In that case, the taxpayer conveyed a half interest in his business for the benefit of his minor son. The trust was irrevocable and *380 the trustee was vested with full and complete powers of management and control. The trustee was a business acquaintance but otherwise unrelated to the grantor. A partnership agreement between the grantor and the trustee to operate a business was a part of the trust agreement. The trustee accepted the trust and actively participated in the management and operation of the partnership and a related partnership formed thereafter. Respondent taxed the income distributable to the trust from each partnership to the taxpayer upon the theory that no valid partnership was formed with the trust as one of the partners. On these facts we held that a valid partnership was formed and that Louis R. Eisenmann was not taxable on the trust's distributive shares of the partnership income. In thus holding, among other things, we said: "* * * The trust created by petitioner was a real entity. It was as much a partner in the enterprise as the other copartner. It retained its distributive share of partnership income and used the income for trust purposes. Tested by each of the factors prescribed in Commissioner v. Culbertson, * * * we come inevitably to the conclusion that the petitioner and the trustee *381 in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." On the strength of the foregoing authorities we decide the partnership issue in favor of the petitioners. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ben Goldstein, Docket No. 26839; Nathan Shainberg and Dorothy Shainberg, Docket No. 26840: Ben Goldstein and Minnie Goldstein, Docket No. 26841; Nathan Shainberg, Docket No. 26842; Sam Shainberg, Docket No. 26843; Herbert Shainberg, Docket No. 26844; Estate of Elizabeth Shainberg, Deceased, Sam Shainberg, Administrator; and Sam Shainberg, Docket No. 26845.↩